AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a Pennsylvania corporation, Appellant,

v.

MINNESOTA FARM BUREAU SERVICE CO., a Minnesota corporation, Appellee.

No. 16199.

United States Court of Appeals Eighth Circuit.

Oct. 14, 1959.

Frank X. Cronan, Minneapolis, Minn. (Harold J. Carroll, and Carroll, Thorson, Anderson & Cronan, Minneapolis, Minn., on the brief), for appellant.

Bernard P. Friel, St. Paul, Minn. (Richard E. Kyle and Briggs, Gilbert, Morton, Kyle & Macartney, St. Paul, Minn., on the brief), for appellee.

Before GARDNER and VOGEL, Circuit Judges, and MICKELSON, District Judge.

VOGEL, Circuit Judge.

Minnesota Farm Bureau Service Company, appellee, hereinafter referred to as plaintiff, brought this action against the American Casualty Company of Reading, Pennsylvania, hereinafter referred to as defendant. The action was based upon certain comprehensive liability policies of insurance issued by the defendant to the plaintiff during the years 1948 through February 1, 1955. The case was tried to the court without a jury and resulted in findings, conclusions and an order for judgment in favor of the plaintiff in the sum of $19,404.28. In appealing to this court, the defendant complains generally that:

1. The trial court erred in finding that the plaintiff had not violated the terms of the policies with respect to notice and that the defendant was not prejudiced in any way by the fact that the trials of state court actions against plaintiff were scheduled to begin one week after defendant received notice of claims.

2. The court erred in finding that the defendant, in denying liability on the grounds that the claims were not within the coverage of the policies, waived the provisions of the policies requiring notice.

3. The trial court erred in making finding of fact No. 16 to the effect that the damages, which were the basis of the claims made against the plaintiff by others, were the unintended and unforeseen results of plaintiff's manufacturing operations and were within the coverage afforded by the comprehensive general liability policies issued by the defendant to the plaintiff, because such finding is contrary to the evidence herein and contrary to applicable law.

We shall deal first with alleged error No. 3.

■ The policies issued by the defendant to the plaintiff for the years prior to February 1, 1954, carried the following pertinent insuring clause:

"To pay on or behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, * * * for damages because of injury to or destruction of property, including the loss of use thereof, arising out of such of the coverages hereinafter defined as are indicated by specific premium in Item 3 of the declarations; * * * *Coverage D—Property Damage Liability* other than Automobile *arising out of an accident or accidents.* Any property damage hazard not otherwise excluded in the policy that does not come within Coverage C." (Emphasis supplied.)

The policy issued by the defendant to the plaintiff for the year subsequent to February 1, 1954, carries the following insuring clause:

"*Coverage D—Property Damage Liability—Except Automobile.*

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as *damages* because of injury to or destruction of property, including the loss of use thereof, *caused by accident.*" (Emphasis supplied.)

We find no distinction between the insuring clauses of the policies and agree with the trial court that:

"The policies obligated the defendant to pay on behalf of the insured all sums which the insured should become legally liable to pay as damages because of injury to or the destruction of property including the loss of use *caused by accident.*" (Emphasis supplied.) Minnesota Farm Bureau Service Co. v. American Casualty Co., D.C.Minn. 1958, 167 F.Supp. 315, 317.

And:

"By their terms the various insurance policies extend coverage to the plaintiff for property damage by reason of the liability imposed on the plaintiff by law *arising out of accidents.*" (Emphasis supplied.) 167 F.Supp. at page 320.

The question thus presented under claimed error No. 3 is whether or not the trial court was correct in concluding that the liability for damages imposed upon plaintiff arose out of an accident or accidents within the terms of the policies. A recitation of the facts is necessary to a proper determination of the correctness of the trial court's conclusion.

Plaintiff is a Minnesota corporation engaged in the manufacture and sale of inorganic fertilizer composed of phosphate, potash and liquid nitrogen (ammonia) in varying proportions. Plaintiff's manufacturing plant is located in St. Paul, Minnesota. Plaintiff commenced production in its plant in July of 1945 and in that year manufactured approximately 9,575 tons of fertilizer. Production in each year thereafter increased until in 1954 plaintiff produced a total of 61,379 tons.

Defendant is a corporation engaged in the business of writing casualty and liability insurance and issued its policies to the plaintiff as referred to heretofore.

In the spring of 1954 some residents living in the vicinity of the plaintiff's plant made verbal complaints to employees of the plaintiff with respect to vibrations, ammonia fumes and powder or dust which it was claimed emanated from the plaintiff's premises and which it was further claimed caused damage to the property of the complainants and injury and discomfort to their persons and their families. On June 3, 1954, an attorney representing some of the persons residing in the vicinity of the plaintiff's plant wrote to plaintiff, demanding that the plaintiff abate the alleged nuisance claimed to exist at its plant. Plaintiff referred the letter to its regular attorneys, who conferred with the attorney for the complaining residents concerning the claims. Such conferences were unavailing and on July 8, 1954, actions

were commenced in state district court against the plaintiff for damages and for injunctive relief. The complaints in each of the cases were identical and included the following allegation:

"That the Defendant has created and maintained a nuisance on its premises, with frequent detonations of powerful explosives thereon, causing disturbing noise and the vibration of land owned by plaintiffs, and shaking the buildings thereon, causing the masonry and plaster and other parts of the buildings to crack, loosen and fall, weakening the structures and causing rapid deterioration, frightening the occupants and impairing its value; that it has and is violating the ordinances of the City of St. Paul and the laws of the State of Minnesota, in its said activities;

The noxious odors, fumes, gases, and powders, in great volume, emanate from the Defendant's said property, particularly, but without limiting the foregoing, during the handling and manufacture of fertilizer, and that these are nauseating to the occupants of Plaintiffs' premises, deleterious to their health, and disruptive to their peace of mind and injurious to their welfare, as well as damaging the plant life on their said property and even killing the same, and befouling the buildings and personal property and further impairing the value of the Plaintiffs' property, both real and personal;

That by reason of the close location of Defendant's property and the said nuisance to Plaintiffs' property, their damage has been particular, special and substantial."

The state court found in favor of all claimants for substantial amounts and determined that the claimants had sustained property damages covering the period from July 8, 1948, to January 26, 1955. (Insofar as two of the claimants were concerned, the period was slightly shorter.)

In addition to the District Court's findings, including finding No. 16, which is herein specifically attacked, the parties in the court below stipulated, among other things, as follows:

"The unprocessed potash and phosphate (used by the defendant in manufacturing fertilizer) are in powder form. During storage these ingredients, because of their chemical composition, have tendency to harden, making it difficult to shovel the materials out of the bins for use in the manufacturing process. In order to loosen the materials, explosives are used to blast the solidified material and make it easier to handle.

"At the trial of the State Court actions it was testified that on occasion as many as 12 sticks of explosive, known as agritol, which is similar to dynamite, were used in freeing the above-described materials, each stick of the said explosive weighing a half pound. Thereafter, in February of 1955, the Service Company limited the number of sticks of agritol to be exploded in any one place to eight, and, thereafter, in September of 1955, the Service Company limited the number of sticks of agritol to be exploded in any one place of the Service Company to four sticks.

"The dry materials so loosened are taken from the storage bins by tractor to a hopper, from which it is carried by conveyor belt to an 'ammoniator.' The liquid nitrogen is brought by pipe from the storage tank to the ammoniator and is there combined with the dry materials to make the finished product. This finished product in moist form is then carried by conveyor belt from the ammoniator to storage bins for drying and curing. While so stored, the hardening process re-occurs, although to a lesser extent than when the powder is in its natural state. As a consequence, some explosives must be used to free the product so

that it can be carried by conveyor for sacking and ultimate shipment. Some of the finished product was carried to a hopper, from which it was unloaded out the side into bulk trucks.

"In the spring of 1954 some of the residents living in the vicinity of the Service Company made oral complaints that vibrations, ammonia fumes, and powder or dust emanating from the Service Company plant were causing damage to their real and personal property and injury and discomfort to their persons and to members of their families."

The question here is whether or not under these facts the losses were "caused by accident" or arose "out of an accident or accidents". The District Court, in holding that there was coverage under the policies issued by defendant, stated:

"This damage was in fact a completely unexpected and unintended result of an intentional act and was an accident within the terms of the various policies issued by the defendant. Hauenstein v. St. Paul-Mercury Indemnity Co., 242 Minn. 354, 65 N.W.2d 122. Accordingly this Court has found that the damage sustained by the plaintiff was in consequence of a risk covered by the various policies of insurance issued to it by the defendant." 167 F. Supp. at page 320.

The facts in the Hauenstein case relied on by the trial court, insofar as they might be applicable to the situation with which we are here concerned, were as follows: Plaintiffs had been issued a policy of insurance by the defendant whereby the defendant agreed to pay any loss by reason of a liability imposed by law upon the insured because of injury to or destruction of property caused by accident. Plaintiffs sold plaster to a contractor, who used it in the construction of · a hospital. After application, the plaster shrunk and cracked, making it necessary to remove the plaster and re-do the walls and ceilings. In holding that there was coverage under the policy

contract, the Minnesota Supreme Court stated:

"There is no doubt that the property damage to the building caused by the application of the defective plaster was 'caused by accident' within the meaning of the insurance contract, since the damage was a completely unexpected and unintended result. Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." 65 N.W.2d at page 126.

We think the trial court misapplied the Minnesota decision and that it cannot be said in the instant case that the damage was a "completely unexpected and unintended result". The damage here had been occurring since July 8, 1948, and had continued up to January 26, 1955, the date of the commencement of the trials against the plaintiff in state court. We do not think that a happening which is known and open and which continues for a period of approximately six years can be considered accidental. 29 Am.Jur. Insurance, § 931, p. 706-7, defines "accident" and "accidental" for insurance policy purposes as follows:

"931. Definition and construction of 'Accident' and 'Accidental'.— The words 'accident' and 'accidental' have never acquired any technical signification in law, and, when used in an insurance contract, are to be construed and considered according to the ordinary understanding and common usage and speech of people generally. The definitions of these words in insurance cases have been many and varied in form. In substance, however, the courts are practically agreed that the words 'accident' and 'accidental' mean that which happens by chance or fortuitously, without intention or design, and which is unexepected, unusual, and unforeseen. The definition that has usually been adopted by the

courts is that an accident is an event that takes place without one's foresight or expectation—an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected. It has been said that accidents are of two kinds, those that are not the result of human action, and those that are such result. Another definition, therefore, is that an accident is an event which happens without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual to and not expected by the person to whom it happens. It has also been defined as an injury which happens by reason of some violence, casualty, or vis major to the insured without his design, consent, or voluntary co-operation."

See also 45 C.J.S. Insurance § 753, p. 777.

 Judge Gardner, speaking for this court in Ocean Accident & Guarantee Corp. v. Penick & Ford, Limited, Inc., 8 Cir., 1939, 101 F.2d 493, 497, said:

"In determining the meaning of the term 'accident', as used in this policy, the question is not what it might mean to a scientist or one skilled in the subject involved, but what it means to the average man. Lewis v. Ocean Acc. & Guarantee Corp., 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129; Massachusetts Bonding & Ins. Co. v. [John R.] Thompson Co., 8 Cir., 88 F.2d 825. Unless some technical meaning was obviously intended, the words 'accident' and 'accidental' should be given the meaning they impart in common speech. Lickleider v. Iowa State Traveling Men's Ass'n, 184 Iowa 423, 166 N.W. 363, 168 N.W. 884, 3 A.L.R. 1295."

Webster's New International Dictionary, Second Edition, Unabridged, defines accident as follows:

"1. Literally, a befalling. *a* An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event. 'Of moving *accidents* by flood and field.' Shak. *b* Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by *accident*. *c* Chance; contingency. * * *"

The noise and vibrations resulting from the explosions carried on over a period of more than six years could hardly be without foresight or expectation. They could not be called undesigned, sudden, or unexpected. The ammonia fumes, the powder and the dust, emanating from the Service Company plant for a period of more than six years and causing damage to surrounding property and discomfort to persons residing nearby during that time, could not result in the absence of the design, consent and voluntary cooperation of the perpetrator thereof. Acts which are done with knowledge and which continue over a long period of time and which continuously cause damage cannot be termed accidents. Taylor Dredging Co. v. Travelers Ins. Co., 2 Cir., 1937, 90 F.2d 449, 451.

In Kuckenberg v. Hartford Acc. & Indem. Co., 9 Cir., 1955, 226 F.2d 225, 226, an insured contractor brought suit against his insurer to recover under a policy insuring against liability for property damage "caused by accident". The dispute arose from the damage to a railroad track and roadbed by falling rocks and trees resulting from the insured's construction of a highway on a mountainside above the track. The trial court held that damage of the very type which did occur was the normal and probable consequence of the blasting and clearing done by the contractor and therefore not caused by accident. In affirming, the Court of Appeals for the 9th Circuit stated:

"It is true that courts construing insurance contracts have differed in judgment whether the fact that the

responsible cause is an intentional act suffices in itself to preclude the resulting injury from being 'accidental' damage. See cases collected in Note, 1947, 166 A.L.R. 469. *But if, in addition to being intentional, the harmful conduct is reasonably calculated to cause substantial damage of the very sort that occurs, all courts seem to recognize that the damage is outside of the insured risk. The fact that the injury is more extensive than had been anticipated does not suffice to make the damage accidental.* We find sanction for this limitation of the insured risk both in our reading of the reported cases and in our understanding of the normal expectations of the entrepreneur who seeks to protect his activity against liability for damage caused by accident." (Emphasis supplied.) 226 F.2d at page 226.

■ In the instant case the conduct of the plaintiff in using explosives to blast its solidified material, thus resulting in loud noise and vibrations, in allowing the release of ammonia fumes, powder and dust was reasonably calculated to cause the very damage of which the various claimants complained and for which they brought suits against the plaintiff.

In United States Fidelity & Guaranty Co. v. Briscoe, 1951, 205 Okl. 618, 239 P.2d 754, 755, recovery was sought on a contractor's public liability policy insuring against loss by reason of liability imposed by law for dmages to property "caused by accident". The damages for which claim was made against the insured were caused by the insured's unloading, loading and handling large quantities of dry powdered bulk cement, thereby impregnating the immediate and surrounding atmosphere with cement dust for a period of approximately four continuous months, creating a nuisance and causing damages. In reversing a lower court's holding in favor of the insured, the Oklahoma Supreme Court stated:

"Taking into consideration all of the facts and circumstances, we are of the opinion, and so hold, that the claims asserted against contractor were not predicated on, or caused by accident, and not within the coverage of insurance policy, sued upon. They were predicated upon a series of acts, which continued approximately four months, and, at all times, voluntary, intentional, tortious and wrongful, resulting from negligent conduct of contractor. Doubtless same could have been abated by injunction. In any event, same were not caused by accident, in any sense of the word. From facts of this case, both the means and result were, in no sense, accidental. Taylor Dredging Co. v. Travelers Insurance Co., 2 Cir., 90 F.2d 449; Senn Products Corp. v. Hartford Steam Boiler Inspection & Ins. Co., 180 Misc. 675, 41 N.Y.S. 2d 133; El Dorado Refining Co. v. United States Fidelity & Guaranty Co., 157 Kan. 198, 139 P.2d 369." 239 P.2d at page 758.

Here the Farm Bureau's activities which resulted in damage to those who brought suit against it were continuous, voluntary, intentional, tortious and wrongful and were reasonably calculated to result in the damage complained of. The Farm Bureau had created and maintained a nuisance as was so characterized by the attorney for the claimants and as was charged in the various complaints in the suits against the Farm Bureau in state court. It cannot, logically, be said that the resulting damages complained of were caused by accident. We must conclude that finding No. 16 is not sustained by the evidence and that there was no coverage under the defendant's policies for the damages complained of.

Because of the fact that the plaintiff may not recover in any event, we do not reach the other points cited as error by the defendant.

Reversed and remanded with directions to dismiss.