WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, A CORPORATION, APPELLANT, v. PETER KIEWIT SONS' CO., A CORPORATION, ET AL., APPELLEES.

241 N. W. 2d 674

Filed May 12, 1976. No. 40370.

David A. Johnson and Ronald H. Stave of Emil F. Sodoro Law Offices, for appellant.

T. J. Stouffer of Cassem, Tierney, Adams & Gotch, for appellees.

Heard before SPENCER, BOSLAUGH, and McCOWN, JJ., and COLWELL and KELLY, District Judges.

COLWELL, District Judge.

This is a suit for damages, costs, and attorneys' fees for breach of a construction contract, indemnity agreements, and contract of insurance. Trial was had to the court, judgment was first entered for plaintiff, Woodmen of the World Life Insurance Society, a corporation, hereafter called WOW against defendant Peter Kiewit Sons' Company, a corporation, hereafter called Kiewit, for $74,607.75. That judgment was vacated by the trial

court, and judgment entered in favor of Kiewit and defendant Aetna Casualty & Surety Company, hereafter called Aetna, against plaintiff. Plaintiff appeals. We affirm.

This case is a sequel to Northwestern Bell Tel. Co. v. Woodmen of the World Life Ins. Soc., 189 Neb. 30, 199 N. W. 2d 729 (1972), hereafter referred to as the "prior case."

On August 24, 1966, WOW contracted with Kiewit in accordance with architectural specifications and drawings for the construction of a 30-story office building and adjacent utility tunnel in downtown Omaha. Included was a special condition: "The Contractor shall procure for the Owner and Contractor through insurance carriers approved by the Owner and shall deliver the same to the Architect policies for workmen's compensation insurance in amounts as required by law and shall procure, through approved insurance carriers, public liability and property damage insurance insuring the Owner and Contractor * * * for bodily injury or death * * * and * * * property damage. * * * The contractor shall furnish such other insurance as is deemed necessary by the Owner through the Architect. Copies of all such policies shall be delivered to the Owner. The Contractor agrees to *save and hold the Owner harmless from and against all suits, claims, and demands based upon any property damage or alleged injury to* persons (including death) which *may occur or be alleged to have occurred by or on account of any act or omission on the part of the said Contractor, its subcontractors, or any of their servants or agents.* The Contractor shall maintain watchmen, all lights, guards, temporary passages, and all other safety devices and provisions necessary to safely carry on the work, protect the property, and meet the requirements of city or other governmental regulations." (Emphasis supplied.)

For the intended purpose to reduce construction costs the same parties renegotiated the contract on April 13,

1967, by executing a management contract (cost plus basis) which included the following: "16. *Insurance.* The contractor shall insure his operations by procuring and maintaining policies of workmen's compensation, employer's liability and general liability insurance, including any liability arising from the operation of any motor vehicles and any contractual assumption of liability. The workmen's compensation policy shall provide full statutory benefits. The liability policies shall contain those limits normally carried by the Contractor * * *. The owner and his authorized representative shall be additional named insureds under these policies. * * * 18. *Indemnification.* The Contractor agrees to save and hold the Owner and any authorized representative designated in accordance with the provisions of paragraph 2 (b) *harmless from and against all suits, claims, and demands based upon any alleged damage to property or upon any alleged* injury to persons (including death) *which may occur or be alleged to have occurred by or on account of any act or omission on the part of said Contractor, its subcontractors, or any of their servants or agents.* The Contractor shall maintain watchmen, all lights, guards, temporary passages, and all other safety devices and provisions necessary to safely carry on the work, protect the property, and meet the requirements of city or other governmental regulations." (Emphasis supplied.)

Prior to August 24, 1966, WOW had contracted with Omaha Public Power District, hereafter called OPPD, and Northwestern Bell Telephone Company, hereafter called Bell, for the use of a utility tunnel for the storage and maintenance of wires, conduits, and transmission equipment, the contract included an indemnity agreement which was the subject of the "prior case," and is not set out here. No notice of this contract and indemnity was given to either defendant.

As required in the contract Kiewit obtained from Aetna a comprehensive and automobile liability policy cov-

ering Kiewit and several of its listed subsidiaries as additional insureds. The policy was limited to the area of the contract construction. Endorsed thereon, "It is further agreed that the following are additional named insureds as respects the above job only: Woodmen of the World Life Insurance Society and Carl A. Morse, Inc." Thereafter Aetna issued to plaintiff a certificate of insurance. "This policy has been endorsed to provide: 1. Coverage for any liability which Peter Kiewit Sons' Co. has assumed by contract. 2. Insofar as work under this contract is concerned, Woodmen of the World Life Insurance Society is an additional insured."

During construction on May 7, 1968, a fire occurred in the tunnel causing damage to the property of OPPD and Bell, which was the basis for the judgment in the "prior case." That judgment was paid by WOW and it now brings suit to recover for that judgment, attorneys' fees, and costs incurred in its defense and for attorneys' fees from defendant Aetna pursuant to section 44-359, R. R. S. 1943.

In substance, plaintiff's petition alleges two causes of action: (1) A claim against Kiewit based on the contracts and indemnity agreements to recover for the fire loss that it paid in the "prior case," that Kiewit had a duty to defend, hold harmless, and indemnify, and it was liable for that judgment and accrued costs in the total sum of $86,682.29. (2) Plaintiff was an additional insured with Kiewit; and that Aetna had a duty to defend in the "prior case" and is liable for that judgment and costs. There are no allegations of an act or omission of Kiewit as cause of loss. Plaintiff prays for recovery of the judgment as paid in the "prior case," costs, attorneys' fees, and for additional attorneys' fees from Aetna pursuant to section 44-359, R. R. S. 1943.

At the conclusion of the evidence, defendants moved to dismiss for failure of proof, and they renewed demurrers previously made.

On July 7, 1975, judgment was entered for plaintiff

against Kiewit for $74,607.75. Kiewit filed a motion, couched in the language of section 25-1315.02, R. R. S. 1943, for judgment notwithstanding the court's judgment, and in accordance with its prior motions to dismiss. Plaintiff filed a motion for new trial. On September 2, 1975, judgment was entered by the trial court denying plaintiff's motion for new trial, vacating its judgment of July 7, 1975, and entering judgment for both defendants against plaintiff. Plaintiff appeals.

Plaintiff contends that the court was without authority to set aside its original judgment, claiming that defendant Kiewit's motion was improper in a jury-waived case for the reason that its procedure was a motion for new trial.

Section 25-1142, R. R. S. 1943, provides in part: "A new trial is a re-examination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a decision by the court."

Section 25-1128, R. R. S. 1943, provides: "The provisions of this Chapter respecting trials by jury, apply, so far as they are in their nature applicable, to trials by the court."

Section 25-1315.02, R. R. S. 1943, is a special statute intended to save time and expense in jury trial situations. The trial court considers the record made on the trial and decides as a matter of law whether the evidence already in the record justifies the submission of the case to the jury, or whether the court on the trial should have sustained a motion for a directed verdict. Krepcik v. Interstate Transit Lines, 151 Neb. 663, 38 N. W. 2d 533.

"A court of general jurisdiction has inherent power to vacate an adjudication made by it in a civil case at any time during the term of court in which it was made. * * * The exercise of the authority * * * is a matter of legal discretion." County of Scotts Bluff v. Bristol, 159 Neb. 634, 68 N. W. 2d 197. See, also, Lyman v. Dunn, 125 Neb. 770, 252 N. W. 197.

The judgment entered September 2, 1975, was entered during the same term of court as the original judgment; the court made a finding that at the time the original judgment was entered, it misunderstood plaintiff's theory of the case and it also considered evidence which was not a part of the record, further, that justice required the original judgment be set aside.

Without deciding the posture of defendant Kiewit's motions, we hold that the trial court acted within its inherent authority to vacate its own judgment, and there was no abuse of its discretion and authority.

The main issues in this case are threefold: (1) Were defendants obligated to defend in the "prior case," (2) were they precluded from defending and raising the issue of Kiewit's liability under its agreements with WOW, and (3) were they bound by the findings, decision, and judgment in the "prior case"? We consider them together.

The record reveals that before trial of that case both defendants had been put on notice of the pendency and substance of the case, together with a request that they defend and they were granted full power to direct the defense. Both defendants declined to defend.

Plaintiff contends that the terms of the contracts, indemnity agreements, and the insurance contracts required the defendants to defend in the "prior case," and in addition they were required to defend by reason of the following allegations contained in Bell's petition: "A. By failing to construct, provide and maintain an enclosed, reinforced concrete tunnel to house the plaintiff's and A. T. & T.'s telephone facilities; B. By failing to provide adequate protection to plaintiff's and A. T. & T.'s telephone facilities."

"An insurer's duty to defend an action against the insured must, in the first instance, be measured by the allegations of the petition against the insured." Hartford Acc. & Ind. Co. v. Olson Bros., Inc., 187 Neb. 179, 188 N. W. 2d 699.

"In construing an indemnity contract, the terms and language used must be given fair and reasonable interpretation, the contract read in its entirety, and consideration given not only to the contract's language but also to the situation of the parties and circumstances surrounding them at the time of making the contract." Currency Services, Inc. v. Passer, 178 Neb. 286, 133 N. W. 2d 19. See, also, 41 Am. Jur. 2d, Indemnity, § 13, p. 697.

"The estoppel created by the first judgment may not be extended beyond the issues necessarily determined by it. Where it does not appear that evidence showing the liability of the third person was necessarily involved in the determination of the original action and passed upon by the court in rendering judgment, such judgment is not conclusive as to the liability of the defendant in the second action to the defendant in the first action; it is not conclusive as to the issue whether the relation or obligation exists which gives a remedy over, or whether the injury was caused by a wrongful act for which the defendant in the second action is primarily liable. The judgment will not preclude the party responsible over from setting up any defenses which, from the nature of the action or the pleadings, he could not have interposed in the first action had he been a formal party to it." 46 Am. Jur. 2d, Judgments, § 561, p. 723. See, also, City of Lincoln v. First Nat. Bank of Lincoln, 67 Neb. 401, 93 N. W. 698; State ex rel. Weasmer v. Manpower of Omaha, 163 Neb. 529, 80 N. W. 2d 580.

Plaintiff urges the application of the rule in Metcalf v. Hartford Acc. & Ind. Co., 176 Neb. 468, 126 N. W. 2d 471: "Where a person is responsible over to another, either by operation of law or express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud, collusion, or bad faith, will be conclusive against him, whether he appeared or not." This

general rule has limitations as discussed in Barber-Greene Co. v. Bruning Co., 357 F. 2d 31 (Neb., 1966). In that case Bruning manufactured a coupling for Barber-Greene that was included as a part in an asphalt machine that it manufactured. In the use of that machine one Grace was injured. Grace sued Barber-Greene alleging negligent and careless design, manufacture, and construction of the machine. The allegations were not directed to the Bruning coupling alone. Bruning refused to defend, although due notice was given. Barber-Greene sued to recover for the judgment it paid Grace. The court held: "Bruning thus was placed in a position where demand was made upon it to defend the Grace action on the broadest possible base and one not at all restricted to the area of its coupling responsibility. * * * Under these circumstances, Bruning had no obligation to defend the * * * action and is free to defend itself in the indemnity action against any claim of negligence on its part."

"The doctrine of issue preclusion or collateral estoppel recognizes that limits on litigation are desirable, but a person should not be denied a day in court unfairly." Vincent v. Peter Pan Bakers, Inc., 182 Neb. 206, 153 N. W. 2d 849.

The trial court found and we agree that the contracts and indemnity agreements between WOW and Kiewit and the contract of insurance issued by Aetna limited the obligation of the defendants to defend only had there been some allegation of some act or omission on the part of, or attributable to, Kiewit causing the damage complained of, and the agreements between plaintiff and defendants were not so broad as to require defendants to defend in the "prior case." Defendants were not precluded from defending on the issue of Kiewit's denial of liability.

Plaintiff claims that defendants were bound by the findings of fact and judgment in the "prior case," on the theory that the second contract between WOW and Kie-

wit included a right of indemnity regardless of who or what caused the fire. Plaintiff places emphasis on that part of this court's decision in the "prior case": "The fire was extensively investigated and the probable cause as testified to by the investigators was a spark from a cutting torch which dropped through the openings at the top of the tunnel or the dropping of a lighted cigarette or cigar at the point of the fire. The evidence discloses no other possible cause or causes." That part of the decision reflects only the record there before the court, and it does not relate to an act or omission of Kiewit. That decision was not properly before the trial court as it so found in its final judgment.

"When a law action is tried without a jury to the court, the findings of the court have the effect of a verdict of a jury, and the judgment thereon will not be disturbed unless clearly wrong." Mathiesen v. Bloomfield, 184 Neb. 873, 173 N. W. 2d 29.

The trial court could find from the evidence, the record, and after examining the contracts, indemnity agreements, and contracts of insurance, that the plaintiff had a cause of action and right of indemnity from Kiewit against loss and damage that occurred or was alleged to have occurred by, or on account of, any act or omission of Kiewit, its subcontractors, agents, or servants; further that the precise question of Kiewit's liability was neither raised or determined in the "prior case," that the same evidence would not sustain the two suits; and that there was no proof that the fire and resultant damage to the utilities was caused by an act or omission of Kiewit in violation of its contract and indemnity agreement.

This case then is reduced to the proposition that plaintiff failed to either allege or prove a cause of action against either defendant. We cannot say that the judgment dismissing plaintiff's petition was clearly wrong.

AFFIRMED.