HARTFORD ACCIDENT & INDEMNITY COMPANY, A CORPORA-
TION, APPELLEE, V. OLSON BROS., INC., A CORPORATION,
APPELLANT, IMPLEADED WITH LOZIER CORPORATION, A
CORPORATION, APPELLEE.

188 N. W. 2d 699

Filed July 2, 1971. No. 37842.

Gerald P. Laughlin of Young, Baird, Holm, McEachen, Pedersen, Hamann & Haggart, for appellant.

Cassem, Tierney, Adams & Henatsch, Charles F. Gotch, and T. J. Stouffer, for appellee Hartford Acc. & Ind. Co.

Abrahams, Kaslow & Cassman, for appellee Lozier Corp.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an action for a declaratory judgment brought by Hartford Accident & Indemnity Company, the insurer, against Olson Bros., Inc., the insured, and the Lozier Corporation, plaintiff in another action wherein Olson is defendant, to determine the rights of the parties under the terms of an insurance policy issued by Hartford to Olson. The question involved is whether the language of certain "exclusions" in the policy is such that Olson was not afforded coverage in the suit of Lozier against Olson. The trial court determined there was no coverage. Olson appealed. We affirm the judgment of the trial court.

Olson is a roofing contractor. It furnished under contract with Lozier the materials for and constructed and installed in three different stages a roof deck and covering of built-up four-ply paper, asphalt, and gravel on a manufacturing plant belonging to Lozier. The roof in all three stages was of identical materials and construction, consisting of roof deck panels of a wood fiberboard known as "tectum," metal "bulb-tees" which were small "I" beam-like metal strips welded at right angles to the structural roof members at proper distances to support the panel ends, and a gypsum grout which sealed together the bulb-tees and the panels. On top of this deck was laid the paper, asphalt, and gravel. Olson also furnished and installed flashing.

The first stage was completed about April 18, 1963; the second stage about June 21, 1965; and the third about March 24, 1967. Early in 1968 Lozier discovered that the tectum panels of the first two stages had "cupped" or warped so that water stood in each of the panels after rains and the warping caused cracks and check marks to appear in the paper and asphalt which marks or cracks where present generally defined the panel edges. The last stage was beginning to show the same characteristics. The 2-year warranty period of the construction contract had expired.

Lozier on October 20, 1969, brought an action against Olson in which it alleged: The construction of the roof by Olson; that Lozier originally planned to install a conventional steel deck with insulation but upon the recommendation of Olson contracted for the use of tectum; that in discussing the recommendation with Olson, Lozier had pointed out its manufacturing operations involved moisture and heat and the roofing on the plant would have to be satisfactory for these conditions; that Olson orally represented to Lozier a tectum roof would not be affected by moisture and heat and would be satisfactory under the conditions in the Lozier plant; that the representations were made as positive statements of fact with the intent that Lozier should act thereon; that Lozier, believing the representations, relied thereon and on that basis contracted for the roof with Olson; that the representations of Olson were false when made; that the roof was severely affected by heat and moisture involved in the operation of the Lozier plant; that the panels deteriorated and this deterioration was reported to Olson and Olson has failed and refused to remedy the situation; and that Lozier was damaged in the amount of $240,000, "being the fair and reasonable cost of removing said roofing . . . and installing proper roofing thereon."

The plaintiff, Hartford, investigated Lozier's claim and denied Olson coverage under the policy. Hartford then brought this action. Olson counterclaimed for attorneys' fees and expenses in defending Lozier's action. Pending the determination of this suit in the district court, proceedings in Lozier's action against Olson were enjoined.

Hartford's evidence is uncontradicted that there is no damage to property other than the roof and that other physical parts of the building such as steel walls, foundation, etc., are not damaged by the roof deterioration. Olson introduced evidence of a real estate appraiser who testified that the market value of the premises was dam-

aged by reason of the roof deterioration as this was a factor which prospective buyers would consider in making an offer. He also testified that replacement of the roof would restore the market value.

Pertinent policy provisions are the following:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . .

"Coverage B—property damage

"to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

"Exclusions

"This insurance does not apply: . . .

"(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

"(1) to property damage to the named insured's products arising out of such products or any part of such products;

"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equip-

ment furnished in connection therewith; . . .."

The pertinent definitions of the policy are as follows:

"Definitions . . .

" 'completed operations hazard' includes bodily injury and property damage arising out of operations *or reliance upon a representation or warranty made at any time with respect thereto,* but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith . . ..

" 'named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

" 'ocurrence' means an accident, including injurious exposure to conditions, *which results,* during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

. . .

" 'products hazard' includes bodily injury and property damage *arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto,* but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others; . . .." (Emphasis supplied.)

As is to be noted, the policy in question covers what is usually called "products liability" and "completed operations hazard."

The parties apparently agree that the completed roof is the product of the insured, Olson, within the meaning of the policy and that the roof construction is a

completed operation within the meaning of the policy.

Hartford contends that exclusions (1) and (m) eliminate any coverage here as the only damage is to the insured's "product" or "work completed." Olson makes certain contentions with reference to exclusion (k) as it relates to the interpretation of the policy and we will note this later in the opinion.

Olson contends that the burden is upon Hartford to prove facts showing that the risk falls within the exclusions; that the risk is not within the exclusions because the damage is not confined to insured's product or completed work; that the evidence does not show that the damage "arise(s) out of" the insured's work or product; that the phrases "arising out of the product" and "arising out of the work" are ambiguous and susceptible of two constructions, and the one favorable to the insured must be adopted and when this is done the exclusions do not apply; that the damages arise out of reliance upon a false representation made by Olson, i.e., the alleged representations re the qualities of tectum as set forth in Lozier's petition against Olson; and that Hartford's obligation to defend that action must be based upon the allegations of that petition.

The insurer's duty to defend an action against the insured must, in the first instance, be measured by the allegations of the petition against the insured. National Union Fire Ins. Co. v. Bruecks, 179 Neb. 642, 139 N. W. 2d 821. We assume therefore for the purposes of this case that false representations were made.

Let us analyze the language of the insuring provisions of the policy. It is clear that the "damage" which the policy covers must be "caused by an occurrence." If we then relate this language to the allegations of Lozier's petition, we note that the "occurrence" which is the basis of Lozier's claims is the alleged false representation. The "damages" for which recovery is sought is the roof deterioration or damage to the building. (We disregard for the moment the question of whether the damage is

to the insured product or work.) It seems perfectly clear that under the language of the policy the "occurrence," in this case the "alleged representations and reliance" thereon, must have resulted in the physical damage. The deterioration of the panels and the consequent damage clearly was not caused by the representations. It was not caused by reliance upon such representations. It occurred in spite of such representations or reliance thereon. · There is obviously no cause and effect relationship between the representations and the deterioration and none is claimed.

The definitions· of "completed operations hazard" and "products hazard" both contain the following language: "property damage arising out of . . . reliance upon a representation or warranty." It is apparent the damage does not arise out of reliance on the representations. It occurred not because of reliance on representations, but would have occurred whether or not such representations were made. If Olson made such representations (or warranties) this might make Olson liable to Lozier for the falsity or breach thereof, but the hazard covered is obviously property damage which occurs on account of the reliance as where some other property is damaged or personal injury occurs because of the product failure.. If, for example, a representation had been made that the panels had certain weight-bearing characteristics and, not having such qualities, materials resting upon the roof break through damaging persons or property below, the contractor's insurer in this case would be liable for the damage to the property or persons injured, but not for the loss of the panels themselves. The policy provisions in question clearly do not cover the liabilities contained in the usual construction contract warranties.

Olson contends that exclusions (l) and (m) do not apply because the damage is not confined to the product or work, but that there is damage to the premises as a whole by reason of depreciation in its market value

and therefore the exclusions are inapplicable. The evidence is uncontradicted that the defect is confined to the roof itself. No other portion of the building suffered physical damage. It is only physical damage which the policy covers. Further the evidence is uncontradicted that the replacement of the deck and four-ply roof will completely restore the premises both physically and as to market value.

Olson also contends that exclusions (1) and (m) do not apply because the damage does not arise out of the product or work. This contention with reference to the words "arising out of" apparently involves a very subtle distinction. It is that even if the damage is confined to the product yet the damage does not "arise out of" the product or work but out of something outside the product, namely, the heat and moisture from the plant and therefore the exclusion does not apply. It seems clear to this court that Olson's and Lozier's claim is that the damage does arise out of the product, i.e., its inability to withstand heat and moisture from the plant. This is the entire basis of the claim. The strained construction contended for by Olson as against the clear meaning of the language cannot be sustained. Olson cites Aetna Casualty & Sur. Co. v. Ocean Accident & Guar. Corp., 386 F. 2d 413, to the effect that the words: ". . . 'arising out of' means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy.'" We agree with that court's definition of the term, but it does not help Olson. If the allegations of Olson's petition are true, as we must assume they are, then the warping arises out of or is caused by the lack of certain specific qualities in the tectum.

Olson contends that since in exclusions (1) and (m) no reference is made to the words "or reliance on a representation or warranty," and since these words are not referred to in exclusion (k), the damages which result from false representations are not excluded. The

difficulty with the position, however, is that the representations or reliance thereon are not claimed to have caused the damage to the property. What we have already said applies. Exclusions (l) and (m) clearly exclude damage to the product or work. This makes it unnecessary to consider the contention as to exclusion (k).

"A policy of insurance should be considered as any other contract to give effect to the intention of the parties at the time it was made as expressed therein. The language of it should be considered not in accordance with what insurer intended the words to mean, but what a reasonable person in the position of the insured would have understood them to mean." Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N. W. 2d 874.

We are not unmindful of the principles that ambiguities must be construed against the insurer and if a policy is fairly susceptible of two constructions and one affords coverage and the other does not then the construction which affords coverage must be adopted. There is no ambiguity in the policy. Complexity is not the same as ambiguity.

Exclusionary provisions such as the ones here involved have been uniformly held by the courts to exclude coverage for damage to the insured's product or work. The language "or reliance on a representation or warranty" is apparently not in the hazard definition clauses in the cases cited, or if it is, it is not mentioned because it is not applicable. This difference, if it exists, does not affect the result for the reasons we have already mentioned. Cases which support the conclusions we reach here are the following: Vobill Homes, Inc. v. Hartford Accident & Indem. Co. (La.), 179 So. 2d 496; Volf v. Ocean Accident & Guar. Corp., 50 Cal. 2d 373, 325 P. 2d 987; Liberty Bldg. Co. v. Royal Indem. Co., 177 Cal. App. 2d 583, 2 Cal. Rptr. 329; Home Indemnity Co. v. Miller, 399 F. 2d 78; McGann v. Hobbs Lumber Co., 150 W. Va. 364, 145 S. E. 2d 476; Kendall Plumb-

ing, Inc. v. St. Paul Mercury Ins. Co., 189 Kan. 528, 370 P. 2d 396; Employers Casualty Co. v. Brown-McKee, Inc. (Tex.), 430 S. W. 2d 21; Bryan Constr. Co. v. Employers' Surplus Ins. Co., 110 N. J. Super. 181, 264 A. 2d 752; Aetna Casualty & Surety Co. v. Harvey W. Hottel, Inc., 289 F. 2d 457; Consumers Constr. Co. v. American Motorists Ins. Co., 118 Ill. App. 2d 441, 254 N. E. 2d 265; Pittsburgh Bridge & Iron Works v. Liberty Mutual Ins. Co., 311 F. Supp. 1079.

In Liberty Bldg. Co. v. Royal Indem. Co., *supra,* the court said in construing exclusions substantially similar to (1) and (m): "This Exclusion means that if the insured becomes liable to replace or repair any 'goods or products' or 'premises alienated' or 'work completed' after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some other property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if the water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage to the walls would not."

Olson cites S. L. Rowland Constr. Co. v. St. Paul Fire & Mar. Ins. Co., 72 Wash. 2d 682, 434 P. 2d 725, for its position and we agree that case supports it. There the insured was a general contractor in the construction of a dwelling. The dwelling was substantially damaged by fire because the insured in the course of

construction placed a joist too near a fireplace and the house caught fire and was badly damaged. The insured's policy contained exclusions similar to those we have considered here. That court held, in effect, that only the joist and other portions out of which the accident arose were the insured's product and not the whole house. The insurer was liable for the cost of repairs less whatever was determined finally to be the product. We can find no justification in the policy provisions for the distinction which that court made.

Olson cites Hauenstein v. Saint Paul-Mercury Indem. Co., 242 Minn. 354, 65 N. W. 2d 122. This is one of a number of similar cases in which a supplier's product was incorporated into a structure and because it was defective there was damage to the work into which the product was incorporated. In such case where the policy exclusions were similar to the ones under consideration here, the supplier's insurer was liable for the damage except for the cost of the product incorporated into the other work or products. In the above case, the insured supplied defective plaster to the general contractor. The insurer was liable for labor costs, materials other than the plaster necessary to restore the work, and the loss for use of the building. Dakota Block Co. v. Western Casualty & Surety Co., 81 S. D. 212, 132 N. W. 2d 826, is a similar case. Other such cases are cited in the note at 40 N. Y. U. Law Rev. 1180. See, also, St. Paul Fire & Marine Ins. Co. v. Northern Grain Co., 365 F. 2d 361.

In Shields v. Hiram C. Gardner, Inc., 92 Idaho 423, 444 P. 2d 38, cited by Olson, there was a genuine ambiguity or conflict between the insuring provisions and the exclusions and the court quite properly construed against the insurer. That case is not applicable here.

The judgment of the trial court is correct and is affirmed.

AFFIRMED.