MAPES INDUSTRIES, INC., A NEBRASKA CORPORATION, APPELLANT, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, A MARYLAND CORPORATION, ET AL., APPELLEES.

560 N.W.2d 814

Filed March 28, 1997.   No. S-95-469.

Tyler J. Sutton and Kerry L. Kester, of Woods & Aitken, for appellant.

Michael A. England, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellees.

White, C.J., Caporale, Wright, Connolly, and Gerrard, JJ., and Sprague, D.J.

Caporale, J.

## I. STATEMENT OF CASE

In this declaratory judgment action, the plaintiff-appellant insured, Mapes Industries, Inc., seeks a declaration that its insurers, the defendants-appellees United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Underwriters, Inc., and Fidelity and Guaranty Insurance Company, hereinafter collectively referred to as USF&G, are obligated to defend Mapes in a suit brought against it by the defendant-appellee Harmon Contract, W.S.A., Inc. The district court sustained the defendants' motion for summary judgment, thereby dismissing Mapes' action. Mapes thereupon appealed to the Nebraska Court of Appeals, which, in an unpublished memorandum opinion, reversed the judgment of the district court and remanded the matter for further proceedings. See *Mapes Indus. v. United States F. & G. Co.*, 4 Neb. App. xviii (case No. A-95-469, July 3, 1996). USF&G then successfully sought further review by this court, asserting that the Court of Appeals erred in ruling that the district court improvidently overlooked Mapes'

potential liability to Harmon. We now reverse, and remand with direction.

## II. SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Central Neb. Broadcasting v. Heartland Radio*, 251 Neb. 929, 560 N.W.2d 770 (1997).

## III. FACTS

Mapes, a manufacturer of laminated insulating panels for use in building construction, sold certain panels which were eventually installed in a building erected in Chicago, Illinois. Subsequently, Harmon filed a complaint against Mapes in an Illinois court, alleging that the panels had "delaminated and caused the exterior surface to 'ripple,'" that the "defect manifested itself throughout the building," and that Harmon "was compelled to rectify the problem." Mapes tendered the defense of the suit to USF&G.

USF&G denied coverage and any duty to defend the suit, writing that it had "carefully reviewed the complaint" and concluded that it was "evident that the only damages claimed [were] to 'rectify the problem' of the delaminated panels manufactured by Mapes" and that the damages claimed did not arise out of an "'occurrence,'" as defined in the policy.

Harmon then amended its complaint against Mapes, adding, so far as is relevant, that Harmon "was forced to correct the defect to avoid and minimize a loss of use of the building and mitigate damages which were caused by the product failure of the panels manufactured by" Mapes and the defendant-appellee Kalco Specialty Sales, Inc., "after the panels had been put to their specified use." Mapes again tendered the amended suit to USF&G, and USF&G again declined to defend Mapes.

At the relevant time, the subject comprehensive general liability policy of insurance provided, so far as relevant, that USF&G would pay on behalf of Mapes all sums which Mapes shall become legally obligated to pay as damages because of

"property damage" caused by an occurrence subject to certain exclusions as set forth in parts IV(2)(a) and (b) hereinafter. The policy additionally grants USF&G the right and imposes upon it the "duty to defend any suit against [Mapes] seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any suit as it deems expedient . . . ."

## IV. ANALYSIS

### 1. NATURE OF DUTY TO DEFEND

We begin by analyzing the nature of an insurer's duty to defend a suit brought against its insured. Such a study begins with a review of *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981). In the course of holding therein that an insurer's obligation to indemnify an insured could not be determined until there is a final determination of the insured's obligation to respond in damages and the basis of that obligation, we, in considering insuring language very similar to that in question here, wrote:

> It occurs to us that there are two separate and distinct obligations provided for by this contract of insurance. In the first instance, Allstate agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of bodily injury. That is one contractual obligation existing between Allstate and [the insured]. The second obligation, which is separate and apart from the obligation to pay, is the "right *and duty* . . . to defend any suit against the Insured." . . .

> Not only does the carrier have a right to defend but it has a corresponding duty to do so. This duty is rather broad in that the policy provides that the carrier has a duty to defend even though the suit is "groundless, false or fraudulent." That is to say, the duty to defend is greater than the obligation to pay. There is no requirement that there must be a reasonable likelihood of recovery or even a good faith claim. It is possible by reason of the language of this policy that the company may be obligated to defend a groundless, false, or fraudulent claim though it may not ultimately be required to make any payment.

(Emphasis in original.) *Id.* at 187-88, 313 N.W.2d at 638.

We again noted in *John Markel Ford v. Auto-Owners Ins. Co.*, 249 Neb. 286, 295, 543 N.W.2d 173, 179 (1996), that an insurer has a duty to defend its insured whenever the insurer ascertains facts which give rise to the potential for liability under the policy, and further wrote:

> More specifically, as suggested by one writer, under [*Allstate Ins. Co. v.*] *Novak*, an insurer is obligated to defend if (1) the allegations of the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify.

As observed in *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 784, 502 N.W.2d 484, 487 (1993):

> [T]he nature of the duty to defend is defined by the insurance policy as a contract . . . . In determining whether a defense duty exists, "[t]he rule is well settled in Nebraska that an insurer's duty to defend an action against the insured must, in the first instance, be measured by the allegations of the petition against the insured." . . . However, an insurer's decision whether to defend against a claim cannot be based solely on the allegations of a petition. Rather, "[a]n insurer has a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." . . . Nevertheless, if, according to facts alleged in a petition and ascertained by an insurer, the insurer has no potential liability to its insured under the insurance agreement, then the insurer may properly refuse to defend its insured. . . . Although an insurer is "obligate[d] . . . to defend all suits brought against the insured, even though groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy."

Thus, in determining its duty to defend, an insurer not only must look to the petition, but must investigate and ascertain the relevant facts from all available sources. Mapes' president stated that the panels which Harmon claimed presented aesthetic problems "were not replaced, but instead were covered

up, and this process involved disturbing other components of the . . . [b]uilding which were not manufactured, supplied or installed by Mapes, including disturbing the curtain wall and the removal of the exterior tinted glass on the outside of the building." In addition, Harmon's senior project manager stated that since the occupancy rate for the building was in excess of 76 percent and increasing, the problem with the panels had not affected the leasing of the building.

The question, then, is whether the allegations or additional information establishes, or raises an inference, that there was or may be "property damage" as the result of an "occurrence," as those terms are defined in the subject policy. In making those determinations, we are bound by the rule that the construction of an insurance contract or policy presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Farm Bureau Ins. Co. v. Bierschenk*, 250 Neb. 146, 548 N.W.2d 322 (1996).

## 2. PROPERTY DAMAGE

So far as relevant, "property damage" is defined in the policy as "(1) physical injury to or destruction of tangible property . . . including the loss of use thereof . . . resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence . . . ."

### (a) Physically Injured Tangible Property

We turn our attention first to whether the allegations in the Harmon suit or the additional information set forth in subpart 1 above establishes or raises an inference that property was or may be damaged as described in clause 1 of the foregoing definition of property damage. Relevant to that determination is the policy language reading that

[t]his insurance does not apply:

. . . .

(n) to property damage to [Mapes'] products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of [Mapes] arising out of the work or any portion

thereof, or out of materials, parts or equipment furnished in connection therewith . . . .

The insurer in *Thos v. Employers Mutual Cas. Co.*, 215 Neb. 424, 338 N.W.2d 784 (1983), had issued a comprehensive liability policy with substantially the same language as involved here. The insurer refused to defend an action brought against the insured which arose from the insured's erection of a hog confinement structure which was later wind damaged. At issue was whether the structure had been erected in a workmanlike manner and conformed to a rather general warranty. The *Thos* policy provided completed operations coverage by language like that contained in the policy now before us, namely, for

bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to [Mapes].

We concluded that because loss to the insured's product itself was not covered, and because neither the petition nor the record disclosed damage to other property of the building owner, the insurer was correct in determining that there was no potential liability under the policy and, in turn, refusing to defend the underlying claim. In so reasoning, we recalled our earlier determination that completed operations language did not afford coverage for damage to the product itself, but only for damage to other property or for bodily injury, observing further that the coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss and that the policy was a liability policy, not a contract in the nature of a performance bond or guarantee of satisfactory construction.

Although, unlike the policy at issue here, the policy in *Hartford Acc. & Ind. Co. v. Olson Bros., Inc.*, 187 Neb. 179, 188 N.W.2d 699 (1971), provided products liability and completed operations coverage, the reasoning of the case is nonetheless instructive. The insurer therein had issued a policy to a roofing contractor who had furnished the materials for and constructed and installed a roof deck and covering on the owner's manufac-

turing plant. About a year after completion of the roof, the owner discovered that some roof panels had "cupped" or warped, causing cracks and checkmarks to appear. The warranty period of the construction contract had expired. The owner nonetheless brought an action against the contractor. In claiming coverage, the contractor urged that the damage was not confined to its product or completed work. In rejecting that contention and concluding that as there was no possibility of coverage, the insurer had no obligation to defend the contractor, we wrote:

Let us analyze the language of the insuring provisions of the policy. It is clear that the "damage" which the policy covers must be "caused by an occurrence." If we then relate this language to the allegations of [the owner's] petition, we note that the "occurrence" which is the basis of [the owner's] claims is the alleged false representation [about the quality of the roof]. The "damages" for which recovery is sought is the roof deterioration or damage to the building. . . . It seems perfectly clear that under the language of the policy the "occurrence," in this case the "alleged representations and reliance" thereon, must have resulted in the physical damage. The deterioration of the panels and the consequent damage clearly was not caused by the representations. It was not caused by reliance upon such representations. It occurred in spite of such representations or reliance thereon. There is obviously no cause and effect relationship between the representations and the deterioration and none is claimed.

. . . If [the contractor] made such representations (or warranties) this might make [the contractor] liable to [the owner] for the falsity or breach thereof, but the hazard covered is obviously property damage which occurs on account of the reliance as where some other property is damaged or personal injury occurs because of the product failure. If, for example, a representation had been made that the panels had certain weight-bearing characteristics and, not having such qualities, materials resting upon the roof break through damaging persons or property below, the contractor's insurer in this case would be liable for the

damage to the property or persons injured, but not for the loss of the panels themselves. The policy provisions in question clearly do not cover the liabilities contained in the usual construction contract warranties.

[The contractor] contends that exclusions (l) and (m) do not apply because the damage is not confined to the product or work, but that there is damage to the premises as a whole by reason of depreciation in its market value and therefore the exclusions are inapplicable. The evidence is uncontradicted that the defect is confined to the roof itself. No other portion of the building suffered physical damage. It is only physical damage which the policy covers. Further the evidence is uncontradicted that the replacement of the deck and four-ply roof will completely restore the premises both physically and as to market value.

*Id.* at 184-86, 188 N.W.2d at 702-03. (Exclusions (l) and (m) in the *Hartford Acc. & Ind. Co.* policy were the same as the exclusions found in subparagraphs (n) and (o) of the policy at hand, as set forth above.)

Harmon's amended complaint fails to allege, and the additional information set forth in subpart 1 above fails to establish or provide us with a basis to infer, the existence or possible future development of *physical injury to or destruction of the building or tangible property other than to the panels* manufactured by Mapes. As a consequence, the property damage otherwise covered by clause 1 of the definition falls within exclusions (n) and (o); thus, clause 1 does not impose upon USF&G an obligation to defend Mapes.

### (b) Tangible Property Not Physically Injured

We thus turn to the coverage provided by the definition of property damage contained in clause 2 of the property damage definition, which covers occurrences not otherwise excluded resulting in the loss of use of tangible property not physically injured or destroyed. The policy provides that such coverage does not apply

(m)  to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of [Mapes] of any contract or agreement, or

(2) the failure of [Mapes'] products or work performed by or on behalf of [Mapes] to meet the level of performance, quality, fitness or durability warranted or represented by [Mapes];

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of [Mapes'] products or work performed by or on behalf of [Mapes] after such products or work have been put to use by any person or organization other than [Mapes.]

In other words, while exclusion (m) initially denies coverage for the loss of use of tangible property neither physically injured nor destroyed by the failure of Mapes' products or work, the language beginning with the word "but" exempts from the operation of the exclusion such loss of use resulting from the sudden and accidental physical injury or destruction of Mapes' products or work put to use by others.

Here, the Harmon complaint fails to allege, and the additional information set forth in subpart 1 above fails to establish or provide us with a basis to infer, that the delamination of the panels resulted from a sudden and accidental event. As a consequence, USF&G has no obligation to defend under clause 2 of the property damage definition.

Because no possibility of coverage has been either alleged or otherwise shown, we need not concern ourselves with whether the delamination of the panels otherwise qualifies as an "occurrence," as that term is defined in the policy.

### V. JUDGMENT

Accordingly, as first noted in part I above, the judgment of the Court of Appeals is reversed and the cause remanded thereto with the direction that it affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.