Robert F. Rossiter, Jr., United States District Judge
This matter is before the Court on defendant Kinsale Insurance Company's ("Kinsale") Motion to Dismiss for Failure to State a Valid Cause of Action (Filing No. 13 ). See Fed. R. Civ. P. 12(b)(6). Plaintiff Topp's Mechanical, Inc. ("TMI") opposes dismissal (Filing No. 15 ), arguing its "allegations and causes of action are sufficiently clear [and] specific" to withstand Kinsale's motion. With diversity jurisdiction under 28 U.S.C. § 1332(a)(1),[1] the Court grants Kinsale's motion to dismiss.
I. BACKGROUND
A. TMI's Insurance Policy
TMI is a specialty mechanical contractor based in Tecumseh, Nebraska. In 2013, TMI obtained a commercial general liability insurance policy ("policy") from Kinsale. Effective from August 1, 2013, to August 1, 2014, the policy generally obligated Kinsale to defend and indemnify TMI against liability for "bodily injury" and "property damage" claims caused within the policy period. The policy also included an "Absolute Pollution and Pollution Related Liability Exclusion" ("pollution exclusion") that excluded coverage for any suit "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of 'pollutants.' " The term "pollutants" is defined as "any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or 'waste,' " the latter of which is defined to include "medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed."
The policy also included an exception labeled the "Time Element Pollution Endorsement" ("time-element exception") which stated that Kinsale would provide liability coverage for certain "pollution incidents" as defined in the exception if the *817 incident was (1) "discovered by the insured within the [scheduled] 'discovery time period' " of seven days and (2) "reported to [Kinsale] in writing within the [scheduled] 'reporting time period' " of forty-five days. The time-element exception defined "pollution incident" as "the discharge, dispersal, release or escape of 'pollutants' into or upon land or any structure on land, the atmosphere or any water course or body of water that arises from 'insured operations' and results in en-vironmental [sic] damage."
B. The Incident
As part of its business operations, TMI agreed to deconstruct an existing carbon-dioxide plant in Beatrice, Nebraska, and reassemble the plant in Boyceville, Wisconsin, for Air Products & Chemicals, Inc. ("Air Products"). On May 29, 2014, Alan Wangerin ("Wangerin"), an Air Products employee, was reportedly standing on a catwalk at the reassembled plant when he was immersed in a hot cloud of ammonia gas that was released from the pressure valve of an anhydrous-ammonia tank at the plant.
Within about a week of the gas release, TMI learned that the plant was being shut down while the incident was investigated. TMI alleges that upon learning of the incident, TMI's representative contacted Kinsale by phone "out of an abundance of caution" to notify Kinsale of the incident and to ask "for Kinsale's instruction as to how best to proceed," even though no demand had been made and TMI did not think the incident constituted a claim under the policy.
According to TMI, someone in the Kinsale claims department told TMI that it could not yet report the incident as a claim under its policy and that TMI should wait until a formal demand had been made or suit had been filed. That did not happen until November 20, 2015, when Wangerin made a formal demand on TMI for injuries he claimed to have suffered as a result of the incident. TMI forwarded the demand to Kinsale and requested in writing that Kinsale defend and indemnify TMI under the policy. On January 8, 2016, Kinsale denied coverage based on the pollution exclusion.
In March 2017, Wangerin sued TMI and others in the United States District Court for the Western District of Wisconsin, alleging they "were negligent in their placement of anhydrous ammonia pressure relief valves under a catwalk where employees of Air Products & Chemicals, Inc. were expected and anticipated to be during work hours." Wangerin alleged his sudden and unexpected immersion in ammonia gas caused him to suffer personal injuries and damages, including injuries to his knees and shoulder from a "hard impact" following his descent from a ladder. TMI notified Kinsale of the suit; Kinsale again denied coverage.
On December 14, 2018, TMI sued Kinsale in the District Court of Douglas County, Nebraska (Filing No. 1-1), alleging Kinsale breached its insurance contract with TMI by refusing to defend and indemnify TMI against Wangerin's claims. On January 17, 2019, Kinsale timely removed the case to this Court, see 28 U.S.C. §§ 1441(a), 1446, and now moves for dismissal pursuant to Rule 12(b)(6) for failure to state a cause of action.
II. DISCUSSION
A. Standard of Review
Federal Rule of Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff need not provide " 'detailed factual allegations' " to meet that standard but must plead "more than *818 an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).
"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). A claim is facially plausible if supported by sufficient factual allegations to allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that alleges facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." Twombly , 550 U.S. at 557, 127 S.Ct. 1955.
The Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." McDonough v. Anoka County , 799 F.3d 931, 945 (8th Cir. 2015) (internal marks omitted) (quoting Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 ). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Ashford v. Douglas County , 880 F.3d 990, 992 (8th Cir. 2018) (quoting Smithrud v. City of St. Paul , 746 F.3d 391, 395 (8th Cir. 2014) ). " 'In a case involving a contract, the court may examine' " contract documents that are not attached to the complaint, even if they "refute a breach-of-contract claim." Zean v. Fairview Health Servs. , 858 F.3d 520, 526 (8th Cir. 2017) (quoting Stahl v. USDA , 327 F.3d 697, 700 (8th Cir. 2003) ).
B. Nebraska Law
The parties agree Nebraska substantive law applies in this diversity case. See Erie R. Co. v. Tompkins , 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ; Secura Ins. v. Horizon Plumbing, Inc. , 670 F.3d 857, 861 (8th Cir. 2012) ("State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship."). If the Nebraska Supreme Court has "not decided a particular substantive legal issue of relevance, [the Court] must try to predict how [that] court would do so and decide the case accordingly." Lindholm v. BMW of N. Am., LLC , 862 F.3d 648, 651 (8th Cir. 2017). The Court will "follow decisions of the intermediate state court when they are the best evidence of [Nebraska] law." Friedberg v. Chubb & Son, Inc. , 691 F.3d 948, 951 (8th Cir. 2012).
Under Nebraska law, "[t]he interpretation of an insurance policy"-like any other contract-"is a question of law." Guerrier v. Mid-Century Ins. Co. , 266 Neb. 150, 663 N.W.2d 131, 134 (2003). "In construing an insurance contract, a court must give effect to the instrument as a whole and, if possible, to every part thereof." Harleysville Ins. Grp. v. Omaha Gas Appliance Co. , 278 Neb. 547, 772 N.W.2d 88, 95 (2009).
TMI has the burden of proving coverage under the policy. Farm Bureau Ins. Co. of Neb. v. Martinsen , 265 Neb. 770, 659 N.W.2d 823, 827 (2003). Kinsale then must prove that the pollution exclusion applies. Econ. Preferred Ins. Co. v. Mass , 242 Neb. 842, 497 N.W.2d 6, 8 (1993). The burden then shifts to TMI to *819 show that the time-element "exception to that exclusion" applies. Dutton-Lainson Co. v. Cont'l Ins. Co. , 271 Neb. 810, 716 N.W.2d 87, 96 (2006).
In interpreting an insurance policy, the Court "must first determine, as a matter of law, whether the contract is ambiguous." Reisig v. Allstate Ins. Co. , 264 Neb. 74, 645 N.W.2d 544, 550 (2002). "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." Id. The Court must determine whether the policy "is ambiguous 'on an objective basis, not by the subjective contentions of the parties' and [is] therefore not compelled to find ambiguity simply because the parties suggest opposing interpretations." Home Ins. Co. v. Aetna Ins. Co. , 236 F.3d 927, 930 (8th Cir. 2001) (quoting Fraternal Order of Police, Lodge No. 2 v. County of Douglas , 259 Neb. 822, 612 N.W.2d 483, 487 (2000) ).
"While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract." Farm Bureau Ins. Co. of Neb. v. Martinsen , 265 Neb. 770, 659 N.W.2d 823, 827 (2003). "When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them." Reisig , 645 N.W.2d at 550.
"Coverage under an insurance policy or contract is generally understood to consist of two separate and distinct obligations: the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated to pay because of injury caused to a third party by acts of the insured." Farm Bureau Ins. Co. v. Witte , 256 Neb. 919, 594 N.W.2d 574, 582 (1999). The duty to defend is broader than the duty to pay. See, e.g., Allstate Ins. Co. v. Novak , 210 Neb. 184, 313 N.W.2d 636, 638 (1981). "[I]n determining its duty to defend, an insurer not only must look to the petition, but must investigate and ascertain the relevant facts from all available sources." Mapes Indus., Inc. v. U.S. Fid. & Guar. Co. , 252 Neb. 154, 560 N.W.2d 814, 817 (1997). "[A]n insurer has a duty to defend its insured whenever the insurer ascertains facts which give rise to the potential for liability under the policy." Id.
C. The Pollution Exclusion
Kinsale denied TMI's requests for defense and indemnity under the policy based on the pollution exclusion. Kinsale contends the Court should follow suit and dismiss TMI's complaint because the pollution exclusion bars coverage and no exception applies.
Kinsale's argument is relatively straightforward. The cloud of ammonia gas that enveloped Wangerin and caused his injuries was a "pollutant" under the policy. His policy excluded coverage unless TMI, in relevant part, reported the pollution incident to Kinsale in writing within forty-five days as required by the time-element exception. TMI did not (and cannot) allege that it provided "timely, written notice of [the] incident to Kinsale," so the exception did not apply and Kinsale had no duty to defend or indemnify TMI under the policy.
Kinsale finds strong support for its argument in recent decisions from the Nebraska Supreme Court. In those decisions, the Supreme Court has broadly construed similar pollution exclusions and readily upheld the insurers' coverage denials as a *820 matter of law because the plain and ordinary meaning of the policy language unambiguously excluded coverage. See, e.g., State Farm Fire & Cas. Co. v. Dantzler , 289 Neb. 1, 852 N.W.2d 918, 923-29 (2014) (listing itself among those courts that "interpret pollution exclusions as excluding coverage for all injuries allegedly caused by pollutants, because the exclusions are unambiguous as a matter of law") (emphasis added); Cincinnati Ins. Co. v. Becker Warehouse, Inc. , 262 Neb. 746, 635 N.W.2d 112, 118-23 (2001) (concluding injuries caused by the release of xylene fumes clearly fell under the broad pollution exclusion because "find[ing] otherwise would read meaning into the policy that is not plainly there").
Kinsale finds further support in cases from courts in other jurisdictions concluding that a clear and unambiguous pollution exclusion precludes coverage for injuries caused by a release of ammonia. See, e.g., Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co. , 711 So.2d 1135, 1137, 1141 (Fla. 1998) ("A substantial majority of ... courts have concluded that the pollution exclusion is clear and unambiguous so as to preclude coverage for all pollution related liability."); Am. States Ins. Co. v. F.H.S., Inc. , 843 F.Supp. 187, 188 (S.D. Miss. 1994) (deciding an insurer had no duty to defend or indemnify the insured against any injury claims arising from the release of ammonia gas because "the policy definition of 'pollutant[ ]' and the pollution exclusion construed as a whole [were] clear and unambiguous").
TMI does not directly challenge Kinsale's cited authority or identify any "specific instances of ambiguous language" in the policy. Cincinnati , 635 N.W.2d at 120 (noting "a mere allegation of ambiguity ... is not enough to sustain a conclusion of ambiguity under Nebraska's insurance policy interpretation laws"). Instead, TMI makes two broader arguments-one based on causation and one based on the theories of waiver and estoppel. Neither is persuasive.
1. Causation
TMI first argues Kinsale at least had a duty to defend TMI against Wangerin's claims because some of his alleged injuries "were not the result of any 'pollutant' to include a 'hard impact' following his descent from a ladder and injuries to his knees and shoulder." In other words, TMI proposes the pollution exclusion does not apply to at least some of Wangerin's injuries because, in TMI's view, those injuries did not arise out of the release of ammonia. Neither the plain language in TMI's policy nor Nebraska law support such a narrow interpretation of the pollution exclusion.
By its terms, the pollution exclusion in TMI's policy excludes coverage for any suit "arising out of the actual" discharge or release of a pollutant. "[T]hough quite broad," that pollution exclusion "is unambiguous." Cincinnati , 635 N.W.2d at 120. The actual policy language in no way "specifically limit[s] excluded claims to" those based solely on injuries directly caused by the physical exposure to a pollutant. Id. at 119-20 (rejecting a narrow interpretation of a pollution exclusion because it was not based on a "plain reading of the exclusion" as required by Nebraska law). And TMI does not provide any support for reading the broad, unambiguous policy language to limit the pollution exclusion in the novel and narrow way TMI proposes. See, e.g., Dalton Buick, Oldsmobile, Pontiac, Cadillac, Inc. v. Universal Underwriters Ins. Co. , 245 Neb. 282, 512 N.W.2d 633, 640 (1994) (reiterating that courts must adopt the "natural and obvious meaning of the provisions in a policy ... in preference to a fanciful, curious, or hidden meaning" (quoting *821 Decker v. Combined Ins. Co. of Am. , 244 Neb. 281, 505 N.W.2d 719, 722 (1993) ) ). To the contrary, the Nebraska Supreme Court has concluded the phrase " 'arising out of' does not require more than a causal connection between the accident and injury." Fokken v. Steichen , 274 Neb. 743, 744 N.W.2d 34, 41 (2008) ; see also Nat'l Union Fire Ins. Co. of Pitt. v. Bruecks , 179 Neb. 642, 139 N.W.2d 821, 826 (1966) ("The words 'arising out of the use' are very broad, general, and comprehensive terms, and are ordinarily understood to mean originating from, growing out of, or flowing from.").
As Kinsale points out, at least one court has decided that a pollution exclusion that precluded coverage for "any liability from '[b]odily injury ... arising out of the ... discharge, dispersal, seepage, migration, release or escape of pollutants' " applied "not only to certain claims, but to any liability that arises out of the alleged escape of any pollutants." Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc. , 205 F.R.D. 1, 8 (D.D.C. 2000) (alterations in original). That reasoning is persuasive and consistent with "[t]he broad interpretation given [to] pollution exclusions" under Nebraska law. State Farm , 852 N.W.2d at 925.
Kinsale and TMI plainly expressed the coverage limitations in the pollution exclusion, and Kinsale is "entitled to have such limitations construed and enforced as expressed." Marx v. Hartford Acc. & Indem. Co. , 183 Neb. 12, 157 N.W.2d 870, 871 (1968).
2. Waiver and Estoppel
TMI next argues the Court should reject Kinsale's analysis of the time-element exception because Kinsale has failed "to consider the well-pleaded allegations of waiver and/or estoppel included in the Complaint." See, e.g., Keene Co-op. Grain & Supply Co. v. Farmers Union Indus. Mut. Ins. Co. , 177 Neb. 287, 128 N.W.2d 773, 777 (1964) (discussing the principles of waiver and estoppel). "Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part." D & S Realty, Inc. v. Markel Ins. Co. , 280 Neb. 567, 789 N.W.2d 1, 17 (2010). According to TMI, Kinsale waived the forty-five-day written notice requirement because a Kinsale claims-department employee told TMI by phone it could not report the claim yet and should wait to report until receiving a formal demand. TMI further argues it detrimentally relied on that representation. TMI acknowledges the policy includes a merger and integration clause but argues that clause "is insufficient to prevent the application of waiver and/or estoppel to the acts of Kinsale's agents."
In response, Kinsale asks the Court to ignore TMI's waiver and estoppel arguments because TMI did not mention those issues in the Complaint. Kinsale also faults TMI for failing to acknowledge that "[t]his case does not involve a simple notice provision." Kinsale emphasizes that the written reporting requirement is integral to the time-element exception, which carves out a limited exception to the pollution exclusion. In Kinsale's view, the exception does not trigger coverage unless the fundamental condition of timely, written notice is met.
Drawing on the Fifth Circuit's rationale in Matador Petroleum Corp. v. St. Paul Surplus Lines Insurance Co. , 174 F.3d 653, 658-59 (5th Cir. 1999), Kinsale argues waiver cannot create or expand coverage under TMI's policy. Kinsale compares the operation of the time-element exception to a "claims-made" policy, in which "notice itself constitutes the event that triggers coverage." Id. In a claims-made policy, proper notice is not a subsidiary issue; it is negotiated by the parties and forms the *822 basis of their bargain. Id. ; see also Lexington Ins. Co. v. St. Louis Univ. , 88 F.3d 632, 634 (8th Cir. 1996) ("With a claims made policy, [the requirement of timely] notice is not simply part of the insured's duty to cooperate. It defines the limits of the insurer's obligation-if there is no timely notice, there is no coverage.").
In Matador , the insured's policy contained a pollution exclusion and a limited endorsement under which a pollution incident would be covered if the insured provided notice within thirty days of the incident beginning. 174 F.3d at 657. The insured did not report a pollution incident until thirty-eight days after the incident occurred. Id. at 656. The insurer denied coverage based on the insured's failure to report the incident as required by the endorsement. Id. The insured argued the insurer waived its right to deny coverage by twice charging and accepting a deductible with respect to the incident despite the late notice. Id. at 660.
The Fifth Circuit rejected the argument because under the applicable state law, waiver and estoppel could not "operate to change either the risks covered or the insurance extended under a policy." Id. The Fifth Circuit concluded the insurer "did not waive its right to deny coverage" because applying waiver and "holding that coverage exists, despite [the insured's] untimely notice, would 'materially change the scope of coverage, would be contrary to the plain language of [the insurance policy,] ... and would circumvent the objective intent of the parties to the contract.' " Id. at 661 (second and third alterations in original) (quoting FDIC v. U.S. Fire Ins. Co. , 956 F.Supp. 701, 706 (N.D. Tex. 1996) ). Kinsale contends the situation is the same here.
Kinsale's arguments are generally well-taken. To prove its claims, TMI must establish it complied with or was excused from complying with its duty to give Kinsale timely, written notice as required by the time-element exception. See Phipps v. Skyview Farms, Inc. , 259 Neb. 492, 610 N.W.2d 723, 730 (2000). TMI apparently concedes that it did not provide timely, written notice, instead expressly relying in its opposition brief on the theories of waiver and estoppel. But TMI did not raise those issues in any meaningful way in the Complaint. TMI's general allegation that it contacted Kinsale's claim department by phone and was told to wait for a formal demand before filing a claim-taken as true-does not suffice under the circumstances of this case. See Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (explaining a plaintiff need not provide " 'detailed factual allegations' " to satisfy Rule 8 but must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ) ); accord McShane Constr. Co., LLC v. Gotham Ins. Co. , 867 F.3d 923, 932-33 (8th Cir. 2017) (concluding the plaintiff did not plausibly allege waiver and estoppel under Nebraska law).
The Court is also not persuaded that-given the nature of the time-element exception and the unambiguous policy language-the Nebraska Supreme Court would apply waiver and estoppel on the facts of this case to excuse TMI's failure to comply with the written-notice requirement and create coverage under the time-element exception. See , e.g., Shelton v. Annuity Bd. of the S. Baptist Convention , 109 F.3d 466, 470 (8th Cir. 1997) (Texas law) ("[W]aiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended." (quoting Minnesota Mut. Life Ins. Co. v. Morse , 487 S.W.2d 317, 320 (Tex. 1972) ) ); accord *823 Design Data Corp. v. Maryland Cas. Co. , 243 Neb. 945, 503 N.W.2d 552, 559 (1993) (noting most jurisdictions follow that general rule). Though not an exact fit, the analysis in Matador and the analogy to a claims-made policy are instructive. The Nebraska Supreme Court has not specifically decided whether waiver and estoppel would apply to a policy like TMI's, but in the past, the Supreme Court has not been quick to use those theories to negate exclusions and expand coverage beyond the policy terms, particularly in the absence of a strong showing of detrimental reliance. See, e.g., Design Data , 503 N.W.2d at 560-61 ("Estoppel may not be used to expand the scope of coverage of a policy to include coverage not provided for in the contract or excluded by the contract."); accord McShane , 867 F.3d at 932 (rejecting the plaintiff's waiver and estoppel arguments and upholding dismissal for failure to state a claim under Nebraska law). TMI's cited cases are not to the contrary.
III. CONCLUSION
TMI has failed to plausibly state a claim upon which relief could be granted. Accordingly,
IT IS ORDERED:
1. Defendant Kinsale Insurance Company's motion to dismiss (Filing No. 13 ) is granted.
2. This case is dismissed.
3. A separate judgment will be entered.

TMI and Kinsale are citizens of Nebraska and Arkansas, respectively, and the amount in controversy exceeds $ 75,000, excluding interests and costs.