496 S.E.2d 35

**BP OIL COMPANY, a Division of BP Exploration & Oil, Inc., Appellant,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, INC., Respondent,**

and

**Wilkerson Fuel Company, Appellant/Respondent.**

No. 2786.

Court of Appeals of South Carolina.

Heard June 5, 1997.

Decided Jan. 26, 1998.

632

Ronald G. Tate, Jr., of Gibbes, Gallivan, White & Boyd, Greenville, for appellant.

David A. White and Brian S. McCoy, both of Robinson, Bradshaw & Hinson, Rock Hill, for appellant/respondent.

H. Carlisle Bean, of Bean & Bean, Spartanburg, for respondent.

STILWELL, Judge:

Seeking to recover expenses incurred in defending an underlying tort action, BP Oil Company (BP) filed this suit against its distributor, Wilkerson Fuel Company, Inc. (Wilkerson), and Wilkerson's insurance carrier, Federated Mutual Insurance Company (Federated). BP sought indemnity from Wilkerson arising out of indemnity provisions contained in agreements between the two. BP, an additional insured under a liability policy issued to Wilkerson, also sought damages from Federated resulting from Federated's refusal to defend BP in the underlying action. Wilkerson cross-claimed against Federated, seeking reimbursement for its expenses in defending the present action. The trial court determined that Federated's refusal to defend was proper and that BP was not entitled to indemnity from Wilkerson. The court also granted judgment for Federated on Wilkerson's cross-claim. BP and Wilkerson appeal. We affirm in part and reverse in part.

## Relationships between the Parties

BP is an oil company that sells branded petroleum products through distributors known as "jobbers." Jobbers, in turn, sell petroleum products to retail outlets such as convenience stores and service stations. Wilkerson is one such jobber, distributing BP petroleum products in South Carolina pursuant to a "Branded Jobber Agreement" (Jobber Agreement). Wilkerson did not sell alcoholic beverages. Wilkerson sold fuel products and leased a BP sign and credit card imprinter [1] to a convenience store, Nivens Handy Mart (Nivens).

---

1. An agreement between BP and Wilkerson, the "Branded Jobber Imprinter Rental Agreement," (Imprinter Agreement) provided that BP would lease to Wilkerson credit card imprinter devices that were then to be distributed by Wilkerson to retail customers.

Through its arrangement with Wilkerson, Nivens sold BP–brand fuel products. At the time in question, Federated was the insurance carrier for Wilkerson, the named insured on a general liability policy (the policy). An endorsement to the policy named Gulf Oil Co., BP's predecessor in interest, as an additional insured.

## Facts

On April 13, 1989, Jeffrey Joyce, a minor, purchased beer from Nivens using his father's BP credit card. Later that evening, Joyce lost control of the automobile he was driving and struck a tree, killing Robert F. Ferguson, a passenger in the car.

Ferguson's personal representative commenced a wrongful death and survival action (the Ferguson action) against several defendants, including Nivens and BP. The Ferguson complaint alleged that Nivens was acting within the scope of its authority as an agent of BP when it illegally sold alcohol to a minor. The complaint also alleged that (1) BP's failure to properly supervise and instruct its "agents, employees and servants" concerning the sale of alcohol to minors and (2) its "permitting its agents to sell alcohol by use of a credit card by BP, when it knew or should have known that minors would use a credit card for purchases of alcoholic beverages" caused the damages at issue.

BP demanded that Wilkerson defend and indemnify it in the tort action pursuant to the terms of the agreements between the two. Wilkerson subsequently placed Federated on notice of the action and requested that Federated provide a defense. Federated denied coverage and declined to defend BP, however, claiming the following exclusion in the policy relieved it of the duty to defend:

> This insurance does not apply to "bodily injury" or "property damage" for which any insured may be liable by reason of:
>
> (1) causing or contributing to the intoxication of any person;
>
> (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

BP retained counsel and defended the Ferguson action. After three days of trial in October 1991, BP was granted a directed verdict and dismissed from the case.

In November 1993, BP brought the present action against Wilkerson and Federated to recover approximately $44,000 in litigation expenses incurred in defending the previous lawsuit. Mark Katz, Federated's claims supervisor, testified by deposition that when it decided the exclusion applied, Federated considered it irrelevant whether or not BP sold alcohol, because the word "you" in the exclusion refers to the named insured, and Federated believed Wilkerson sold alcohol to other stores not involved in the Ferguson action.[2] Katz stated that Federated did not investigate to determine whether Wilkerson did in fact sell alcohol, and admitted that BP informed him that neither BP nor Wilkerson had anything to do with the alcohol that Nivens sold.

Against Wilkerson, BP claimed that Wilkerson breached the Jobber and Imprinter Agreements by failing to indemnify BP for the underlying losses. The indemnity provision in the Jobber Agreement provides as follows:

[Wilkerson] agrees to indemnify and hold [BP] harmless from and against all expense, liability and claims directly or indirectly resulting from or connected with any accident or anything whatever occurring from any cause in connection with the operation or conduct of [Wilkerson's] business except such as may be due to the sole negligence of [BP]

The indemnity provision in the Imprinter Agreement provides as follows:

[Wilkerson] shall indemnify and save [BP] harmless from and against any and all liabilities for loss, damage, injury, or other casualty to persons or property resulting directly or

---

**2.** Nu–Way Marketing Inc. (Nu–Way), a co-insured under Wilkerson's insurance policy, did own and operate convenience stores that sold alcohol. However, Nu–Way did not sell any alcohol to Nivens. Subsequent to Ferguson's death, Nu–Way and Wilkerson merged.

indirectly from the use, existence, or location of the Imprinters. . . .

Wilkerson cross-claimed against Federated, claiming that Federated's refusal to defend and/or pay BP's present claim against Wilkerson was a breach of contract entitling Wilkerson to all expenses incurred in the present action, including any damages Wilkerson may have to pay BP.

This case was tried to the court without a jury. The trial court concluded that Federated had no duty to defend the Ferguson action because the allegations of the Ferguson complaint contend that Nivens was an agent of BP when it sold the alcohol to the minors. The trial court likewise granted judgment for Federated in Wilkerson's cross-claim, stating that the rationale for finding Federated had no duty to defend applied equally to Wilkerson's cross-claim. Finally, concerning BP's claim against Wilkerson, the trial court entered judgment for Wilkerson, concluding Wilkerson did not breach the indemnity provisions in the Jobber and Imprinter Agreements. Both BP and Wilkerson appealed and the appeals were consolidated, with BP designated as the primary appellant.

## BP's Appeal

### I.

BP contends that Federated had a duty to defend it in the Ferguson action because there was no evidence that BP was in the business of selling alcoholic beverages, and the trial court therefore erred in applying the alcohol exclusion contained in the policy. We disagree.[3]

 An insurer's duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured. *Federated Mut. Ins. Co. v. Piedmont Petroleum Corp.*, 314 S.C. 393, 444 S.E.2d 532 (Ct.App.1994). If the facts alleged in a complaint against an insured fail to bring a claim

---

3. BP argues that because the insurance policy in question in this case contains a separation of insureds provision, and South Carolina law requires an exclusion to be applied only against the insured whose conduct is excluded, the trial court erred in determining that the exclusion precluded coverage to BP. In this opinion, we analyze the exclusion only as it applies to BP.

within the policy coverage, an insurer has no duty to defend. *Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 274 S.C. 468, 265 S.E.2d 38 (1980); *Federated*, 314 S.C. 393, 444 S.E.2d 532. An insurer has no duty to defend where the damage alleged was caused by a reason unambiguously excluded by the policy. *Id.*

■ Here, the Ferguson complaint alleged that Nivens's sale of alcohol to Joyce and Ferguson occurred within the scope of Nivens's authority as BP's agent. This allegation amounted to an allegation that BP was in the business of selling alcohol. Therefore, for the purpose of determining Federated's duty to defend BP, the alcohol exclusion was triggered. Because the Ferguson complaint further alleged that Joyce and Ferguson were minors at the time of the sale, the trial court correctly determined that the damage the complaint alleged was caused by a reason unambiguously excluded by the policy and Federated had no duty to defend BP in the Ferguson action.

■ BP argues that even if the complaint, when viewed in isolation, imposes upon Federated no duty to defend, there was no evidence supporting the allegation that it was in the business of selling alcohol. We reject this argument.

Although the determination of an insurer's duty to defend is based upon the allegations in a complaint, BP correctly notes that, in some jurisdictions, the duty to defend will be measured by facts outside of the complaint that are known by the insurer. 7C John A. Appleman, *Insurance Law and Practice* § 4684.01 (Supp. 96–97); *e.g., Mapes Indus. v. United States Fidelity & Guar. Co.*, 252 Neb. 154, 560 N.W.2d 814 (1997); *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991); C.T. Drechsler, Annotation, *Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend*, 50 A.L.R.2d 458, 465 (1956). Nowhere in its brief, however, does BP argue Federated had actual knowledge of the facts in issue. Rather, BP argues only that Federated "never considered or analyzed the allegations of the complaint against BP in handling the claim." We therefore need not decide how the result of BP's appeal might have been different had Federated had actual

knowledge that the relevant allegations in the Ferguson complaint were untrue.

## II.

BP next argues the trial court erred in applying the alcohol exclusion to BP since its alleged status of being in the business of selling alcohol did not proximately cause the injuries in this case. *See South Carolina Ins. Guar. Ass'n v. Broach,* 291 S.C. 349, 353 S.E.2d 450 (1987) (an exclusion does not limit coverage unless it is causally related to the loss). As it does with its previous argument, BP invites us to look beyond the allegations in the complaint to determine Federated's duty to defend. We decline to do so. Because the Ferguson complaint alleged that Nivens sold the alcohol to Joyce and Ferguson on BP's behalf, BP's alleged status of being in the alcohol business would, if proven, certainly have been causally related to the damages alleged.

Moreover, we do not believe such a causal link was necessary for the exclusion to apply. Here the exclusion at issue excluded coverage for " 'bodily injury' or 'property damage' for which any insured may be liable by reason of ... the furnishing of alcoholic beverages to a person under the legal drinking age...." BP's argument refers, however, to the language that directly follows the exclusion: "This exclusion applies only if you are in the business of ... selling alcoholic beverages."

Although BP cites *McGee v. Globe Indemnity Co.,* 173 S.C. 380, 175 S.E. 849 (1934), in support of its argument that BP's status of being in the alcohol business must have proximately caused the injuries involved in this case for the exclusion to apply, the analysis in that case does not apply to the present action. There, the automobile liability policy in question provided that it did not apply "in respect of any automobile ... (2) while used or maintained by any person in violation of law as to age or by any person under the age of sixteen (16) years." *Id.* at 380, 175 S.E. at 849. The plaintiffs' fifteen-year-old son was involved in an accident, and the insurer denied coverage. The insurer, appealing the trial court's overrule of its demurrer, argued that the provision in question was a condition, rather than an exclusion, and the violation of a condition absolutely excludes liability regardless of causa-

tion. The supreme court, assuming the driver's age did not cause the accident, rejected this argument, holding:

> The rule established by [*Reynolds v. Life & Casualty Ins. Co.*, 166 S.C. 214, 164 S.E. 602 (1932) ] is obviously founded upon a reasonable view that, when the parties made the contract of insurance, they were not inserting a mere arbitrary provision, but that it was the purpose of the insurance company to relieve itself of liability from accidents *caused by* the excluded condition.

173 S.C. at 384, 175 S.E. at 850 (emphasis added).

In construing a contract, the primary concern of the court is to ascertain and give effect to the intent of the parties. *D.A. Davis Constr. Co. v. Palmetto Properties, Inc.*, 281 S.C. 415, 315 S.E.2d 370 (1984). In *McGee,* the "status" exclusion directly pertained to a *risk* the insurer understandably did not want to insure, as certainly a driver's youth can be expected to be a proximate cause of an accident. In this case, however, it would not be reasonable to assume Federated limited the application of its exclusion to those insureds in the alcohol business because it anticipated that sale by an insured in the alcohol business would pose a special risk above and beyond that posed by a sale of alcohol by someone not in the alcohol business. Rather, it is clear that Federated's purpose in including the language in question was merely to limit the application of the alcohol exclusion to those insureds in the alcohol business.

### III.

BP next contends the trial court erred in failing to apply the indemnity agreements between BP and Wilkerson contained in the Jobber and Imprinter Agreements. We disagree.

As to the Jobber Agreement, in paragraph 10(a), Wilkerson agreed to indemnify BP "against all expense, liability and claims ... resulting from ... the operation or conduct of [Wilkerson]'s business." The claim in the Ferguson action had nothing at all to do with Wilkerson's business. Wilkerson's business is selling petroleum products. Wilkerson's only connection to Nivens's sale of alcohol to Ferguson was that Nivens was Wilkerson's customer. We agree with the trial court that that is simply not a sufficient connection to trigger the indemnity provision of that agreement.

■ As to the Imprinter Agreement, in paragraph 8, Wilkerson agrees to indemnify BP "against any and all *liabilities* for loss, damage, injury, or other casualty to persons or property resulting directly or indirectly from the use, existence, or location of the Imprinters...." (Emphasis added). We agree with the trial court that BP did not incur any "liabilities" in the Ferguson action. At most, it incurred expenses. Although expenses are covered in the Jobber Agreement, they are not covered by the Imprinter Agreement.

## Wilkerson's Appeal
### I.

■ Wilkerson first argues the trial court erred by failing to find that Federated had a duty to defend Wilkerson in the present case. We agree.[4]

Under the policy, Federated has a duty to defend Wilkerson in any suit alleging damages covered by the policy. BP's complaint alleges Wilkerson is liable to it under the indemnity provisions of the Jobber Agreement and the Imprinter Agreement. Federated has admitted that such documents are "insured contracts" under the policy. Because liability assumed under "insured contracts" is covered, the complaint clearly alleges facts giving rise to Federated's duty to defend. Wilkerson is therefore entitled to be reimbursed by Federated for its attorney fees incurred in this action, which amount to $25,249.77. *See Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co.,* 274 S.C. 468, 265 S.E.2d 38 (1980) (where an insured was required to bring a declaratory judgment action to determine its rights under a policy and the trial court correctly held the insurer had unreasonably refused to defend the insured in the underlying action, the attorney fees incurred by the insured in the declaratory judgment action were recoverable as consequential damages); *see also Cay Divers, Inc. v. Raven,* 812 F.2d 866 (3d Cir.1987) (reimbursement for insured's choice of counsel and expenses ordinarily would fulfill insurer's duty to defend, and is particularly appropriate where there is a conflict of interest between the insurer and insured).

---

4. Because we decide this issue on this ground, we do not address Wilkerson's remaining arguments.

## II.

Wilkerson next argues that Federated's refusal to defend it in this action was unreasonable and in reckless disregard of its rights. Wilkerson therefore contends the trial court erred in denying its request for punitive damages. We disagree.

If an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action. *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (1983). Further, if he can demonstrate the insurer's actions were willful or in reckless disregard of the insured's rights, he can recover punitive damages. *Id.*

Here, although Federated's refusal to defend Wilkerson in this action was unreasonable, we do not find that Federated's actions were willful or reckless. Accordingly, the trial court was correct to deny Wilkerson's request for punitive damages.[5]

**AFFIRMED IN PART AND REVERSED IN PART.**

HOWELL, C.J., and CURETON, J., concur.

---

**5.** All of the specific actions Wilkerson cites in its brief as warranting punitive damages—other than Federated's refusal to defend Wilkerson in the present action—were actions taken by Federated in the Ferguson action, to which Wilkerson was not a party.