697 S.E.2d 667

**Christie L. RICHITELLI and Steve Richitelli, Appellants,**

v.

**MOTIVA ENTERPRISES, LLC d/b/a Texaco; and H.D. Payne & Co., Inc., H.D. Payne and Co. of Greenwood; and Hayne B. Workman, et al., Respondents.**

**No. 4707.**

Court of Appeals of South Carolina.

Heard Dec. 10, 2009.

Decided July 7, 2010.

Rehearing Denied Aug. 27, 2010.

Billy J. Garrett, Jr., of Greenwood, John Paul Detrick, of Hampton, and John S. Nichols of Columbia, for Appellants.

W. Francis Marion, Jr., Joel M. Bondurant, Jr., and Kenneth N. Shaw, all of Greenville, for Respondents.

THOMAS, J.

In this personal injury action arising from a motor vehicle collision, Christie L. Richitelli and Steve Richitelli appeal the grant of summary judgment to Respondents Motiva Enterprises, LLC, d/b/a Texaco ("Texaco"); H.D. Payne & Co., Inc., and H.D. Payne & Co. of Greenwood (collectively "Payne"); and Hayne B. Workman. The trial court held as a matter of law that the Richitellis failed to show Respondents (1) had either an agency relationship with the employer of the driver of the wrecker that collided with their vehicle or (2) operated a joint venture or partnership with the driver's employer. We affirm.

## FACTS AND PROCEDURAL HISTORY

On or about August 6, 2001, while driving her car north on U.S. Highway 25 in Greenwood County, Christie Richitelli was

struck from behind by a wrecker driven by Harry E. Parker and belonging to Parker's employer, North Main Texaco.

At the time of the accident, Parker was using the wrecker to move a vehicle from North Main Texaco to a body shop. Each door of the wrecker displayed a decal saying "North Main Texaco, Greenwood South Carolina."

C. Thomas Sprott purchased the business, then known as "Terry's Texaco and Wrecker Service" in 1987 and later renamed it "North Main Texaco." The property on which the business was located belonged to Payne, which also served as the "jobber" for the gasoline and petroleum products sold by North Main Texaco.[1] Hayne Workman was the managing partner of Payne.

In 1998, Texaco provided a Marketer Agreement to Payne and Workman. This agreement required Payne to sell Texaco brand motor fuels at all Texaco-branded facilities, including North Main Texaco. Although the agreement expressly stated that retail facilities were at all times independent business entities, they were to meet certain Texaco-branded identification. Failure to comply with this requirement could subject a facility to "deidentification" from the Texaco name. The agreement also required Payne to (1) submit to Texaco any promotional material or advertising before use, (2) require its retail operators to participate in training provided by Texaco on customer service, operations, and marketing; and (3) ensure compliance by its retail operators with the Texaco Wholesale Marketer Credit Card Agreement and other similar agreements.

Texaco also provided a "Retail Facility Standards Manual" covering identity, facility appearance, signage, fuel dispensers, and use of promotional materials. In addition, Texaco regularly evaluated its retail facilities. In station evaluations of North Main Texaco, Texaco noted concerns such as employees

---

1. A "jobber" is a distributor through which an oil company sells branded petroleum products. *BP Oil Co. v. Federated Mut. Ins. Co.*, 329 S.C. 631, 634, 496 S.E.2d 35, 37 (Ct.App.1998). The jobber in turn sells these company-branded petroleum products purchased from the oil company to retailers, such as convenience stores and service stations. *Id.*

not being appropriately dressed, lack of approved landscaping, lack of proper signage, unavailability of "pay at the pump," and substandard maintenance of the facilities.

On August 13, 2002, Christie Richitelli filed an action against Parker, the Sprotts, and North Main Texaco for damages arising from the collision. Following discovery, Christie Richitelli and her husband Steve Richitelli settled with Parker and the Sprotts and signed a covenant not to execute.

On July 20, 2004, the Richitellis filed an "Amended Complaint" under a different case number. In addition to Parker and Sprott, the Richitellis included Texaco, Payne, and Workman as defendants. In their new lawsuit, the Richitellis alleged (1) Parker and North Main Texaco were agents of Texaco, (2) Payne was acting at Texaco's agent at all pertinent times, and (3) all the defendants operated a joint venture or partnership for their shared financial benefit.

Respondents subsequently moved for summary judgment. In support of their motion, Respondents argued the Richitellis (1) failed to establish that Parker was the actual or apparent agent or servant of any of the defendants and (2) there was no evidence of a joint venture or partnership between Respondents and either Sprott or Parker.

The trial court heard the matter on June 5, 2006, and by order dated June 29, 2006, granted summary judgment on the ground that the Richitellis, as a matter of law, could establish neither an agency relationship between Parker and Respondents nor the existence of a joint venture or partnership.[2]

On July 17, 2006, the Richitellis moved to alter or amend the summary judgment order. The trial court denied the motion by form order filed February 26, 2008, whereupon the Richitellis filed this appeal.

## ISSUE

The only ground for summary judgment the Richitellis challenge in their appeal is the trial court's ruling that no

---

**2.** Respondents also maintained they were entitled to summary judgment based on the covenant not to sue; however, the trial court declined to use this ground as an additional basis for summary judgment.

evidence showed a master-servant relationship existed as to Parker's operation of the wrecker on the date of the accident. The Richitellis do not dispute the trial court's finding they could not, as a matter of law, prove a joint venture or partnership.

## STANDARD OF REVIEW

"An appellate court reviews the grant of summary judgment under the same standard applied by the trial court." *Houck v. State Farm Fire & Cas. Ins. Co.*, 366 S.C. 7, 11, 620 S.E.2d 326, 329 (2005). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 355, 650 S.E.2d 68, 70 (2007).

## LAW/ANALYSIS

■ The Richitellis argue the trial court erred in ruling no evidence showed a master-servant relationship existed as to Parker's operation of the wrecker on the date of the accident. They maintain that they presented evidence that Texaco had the right to control North Main Texaco and that it is this right, not its exercise, that is the decisive test in determining the existence of a master-servant relationship. As evidence of the right to control, the Richitellis point out that notwithstanding the express disclaimers in the Marketing Agreement of any agency relationship, (1) North Main Texaco used Texaco's signs, logos, products, advertising, and uniforms, all of which were under the control of Texaco and (2) the Marketing Agreement provided Texaco with the right of control over the type of fuel sold, the manner in which it was delivered, the manner in which retailers advertised their businesses and maintained their facilities, and the way their employees interacted with their customers.

■ We agree with the Richitellis that the critical question here is the right of the purported master to control the actions of the purported servant rather than the actual exercise of this right. *See Jamison v. Morris*, 385 S.C. 215, 221, 684 S.E.2d 168, 171 (2009) ("The decisive test in determining whether the

relation of master and servant exists is whether the purported master has the right or power to direct and control the servant in the performance of his work and in the manner in which the work is to be done."). We disagree, however, with their argument that the various indicia of control that they cited were sufficient to create a jury issue regarding Respondents' vicarious liability for Christie Richitelli's injuries.

In *Jamison,* the South Carolina Supreme Court reversed vicarious liability verdicts against both a jobber and an oil company, holding there was no evidence that a company-branded gas station that illegally sold alcohol to the driver of the vehicle in which the plaintiff was seriously injured was the actual agent of either appellant. As in the present case, the oil company in *Jamison* required retailers of its gasoline products to enforce specific standards regarding employee appearance and conduct, as well as the appearance and maintenance of the business premises. *Id.* at 223, 684 S.E.2d at 172. The gas station in *Jamison* was also required to participate in a "Mystery Shopper Program," through which the oil company and the jobber evaluated branded stations on their compliance with certain designated standards. *Id.* at 224, 684 S.E.2d at 172–73.

Notwithstanding this evidence, the court held the trial court erred in submitting the issue of vicarious liability to the jury, stating: "A franchisor is not vicariously liable for a tort committed at an independent gas station unless the plaintiff can show that the franchisor exercised more control over the franchisee than that necessary to ensure uniformity of appearance and quality of services among its franchisees." *Id.* at 222–23, 684 S.E.2d at 172. The court further held it found no evidence to support a finding that either the oil company or the jobber "had the right or power to control the retailer in the performance of its retail alcoholic beverage sales or in the manner in which *that* work was done." *Id.* at 225, 684 S.E.2d at 173 (emphasis added). Based on this ruling, we agree with Respondents that liability against Payne or Texaco required evidence of a master-servant relationship " 'between the wrongdoer and the person sought to be charged for the result for the wrong *at the time and in respect to the very transaction out of which the injury arose.'* " *Holder v. Haynes,* 193 S.C. 176, 7 S.E.2d 833, 838 (1940) (emphasis added) (quoting *Linville v. Nissen,* 162 N.C. 95, 77 S.E. 1096, 1099 (1913)).

This court requested and received supplemental briefs from counsel on the applicability of *Jamison*, which was issued by the Supreme Court after the briefs in the present appeal were filed. In their supplemental brief, the Richitellis attempt to distinguish *Jamison* by emphasizing the attenuated relationship between alcohol sales and the general operation of a service station in that case. In the present case, however, neither the Marketer Agreement nor the Retail Facility Standards Manual addresses the provision of wrecker services by an individual retailer, and the Richitellis have not called to our attention any other evidence in the record that would support a determination that either Texaco or Payne attempted to regulate this activity. We therefore do not agree that the allegedly attenuated relationship between alcohol sales and the general operation of a service station is a valid reason to distinguish *Jamison* from the matter presently before us.

## CONCLUSION

We hold *Jamison* is the controlling authority in this case and affirm the trial court's finding that the Richitellis failed to show the presence of a genuine issue of material fact as to whether either Texaco or Payne had the right to control the operation of the wrecker service by North Main Texaco.

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.